OLIVER A. HOCOMB

*v.*

ADOLPH KEMPNER *et al.*

*Opinion filed February 21, 1905—Rehearing denied April 5, 1905.*

1. INJUNCTION—*what not ground for enjoining disposal of se-curity for margins in grain trades.* An undisclosed intention upon the part of complainant to gamble in grain and settle in differences is not ground for enjoining the broker who made the purchases from disposing of the security deposited with him by complainant's agent to secure the margins, where the broker had no acquaintance with complainant and acted in good faith in the transaction, intend-ing to carry out the contract for complainant at maturity unless it was sooner closed.

2. BROKERS—*when rights of broker are not affected by misrep-resentation of customer's agent.* Misrepresentations by an agent to his principal with respect to the price paid by him for certain grain which he induced the principal to take over on his own account do not affect the rights of the broker who effected the transaction, where he was not aware of the agent's misrepresentation and acted in good faith in all transactions with the principal.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

JUDSON F. GOING, (DANIEL V. GALLERY, of counsel,) for plaintiff in error.

RINGER, WILHARTZ & LOUER, for defendants in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Plaintiff in error filed his bill in the circuit court of Cook county against defendants in error for an injunction re-straining them from selling or disposing of a stock certifi-cate deposited by him to secure margins on purchases of wheat. The bill was answered and the evidence of the re-spective parties was heard in open court. A preliminary

injunction which had been granted was dissolved and the bill was dismissed.· The Appellate Court for the First District affirmed the decree.

In his bill complainant alleged that on January 17, 1902, the defendant McLoraine represented to him that he had purchased·on January 7, 1902, through defendant Kempner, a member of the board of trade of the city of Chicago, ten thousand bushels of wheat at 83¼ cents per bushel, to be delivered in May; that he was unable to furnish sufficient money to secure Kempner with the necessary margin; that he asked complainant to assume the.trade and be substituted ˉon the books of Kempner as the holder of the wheat; that complainant consented to the substitution and delivered. to McLoraine a certificate of twenty shares of the capital. stock of the United States Steel Corporation as security for the necessary margin; that McLoraine delivered the certificate to Kempner and received a receipt for complainant; that on February 1, 1902, complainant was informed by Kempner that he was indebted to him in the amount of more than $1000 in losses upon trades made in his behalf, and that he would sell the certificate unless the money was paid. The grounds for relief set up were that the purchase by McLoraine was colorable, only, for the purpose of gambling in the market price of wheat and was not intended as a purchase in good faith, and his intention was known to Kempner; that McLoraine's representation that he had ten thousand bushels of wheat at 83¼ cents per bushel was false, and that complainant never authorized Kempner to make any other trade for him except that trade.

The following facts were proved at the hearing: Complainant was an electrician, employed at the Palmer House, in Chicago. The defendant McLoraine had been in the employ of George H. Phillips, a commission merchant in Chicago, up to the time of the failure of Phillips on January 14, 1902. For about two months before the failure complainant had been around Phillips' office almost every day, and Mc-

Loraine had acted as his agent in trading in grain, through Phillips, with discretion to act for complainant and purchase whenever he saw fit. He had acted as agent for the complainant during that time, exercising his own discretion, and he made considerable money for complainant. At the failure Phillips was indebted to the complainant about $866. The certificate for twenty shares of capital stock had been deposited with Phillips by the complainant as security for these trades. When the failure occurred McLoraine controlled the business of a number of customers, and was anxious to retain their business until a resumption by Phillips, which was then expected. To effect that object he transferred such business as he controlled to the defendant Kempner, who transacted the business without any compensation, to enable Phillips to retain the customers when he should start up again. On January 17 McLoraine told complainant that he had ten thousand bushels of wheat at Kempner's at 83¼ cents, and he asked him to take it off his hands. The wheat was then worth from 80½ to 81½ cents per bushel, so that there had been a loss in the wheat, but complainant and McLoraine were expecting a rise. McLoraine had been called upon for a margin and was not in a situation to furnish it, and complainant agreed that if McLoraine would get the stock certificate deposited with Phillips released so he could use it, he would take the other trade with Kempner. McLoraine obtained the stock certificate and delivered it to Kempner and returned a receipt for it to Hocomb, which stated that it was received as margins on trades. The price of wheat continued to fall and the wheat was sold out at a loss. McLoraine made some other purchases of wheat through Kempner for complainant between January 17 and the end of that month which resulted in losses amounting, together with an item of $40 for some transaction in Milwaukee, to $1019.74. Kempner was not acquainted with Hocomb and never saw him. The ten thousand bushels of wheat had, in fact, been bought by McLoraine in the name

of Fox at 84⅛ cents. Complainant testified that he understood from McLoraine that it was bought for 83¼ cents, but McLoraine's testimony was that he said he had the wheat at 83¼ cents,—not that it cost that price,—but that he thought he had enough margin to carry it to 83¼, so that it stood at 83¼ cents. When complainant was informed of a second purchase a few days afterward, in which the market price was then one-half cent per bushel below the purchase price, so there was a loss in it, he testified that he denied the authority of McLoraine to make the purchase. McLoraine testified that he did not question his authority but did question his judgment, and said he ought not to have done it. Complainant testified that he told McLoraine on the morning of January 14 to quit trading for him and that he was through with the board of trade transactions for a while. McLoraine testified that after the failure complainant recognized the value of his previous services, and told him if he would get the stock certificate from Phillips he would place it wherever McLoraine should make connections, and commence trading again and give him one-half the profits of future trades; that he told complainant he appreciated his kindness; that he was a heavy loser to Phillips, and that complainant could do him a favor if he would take the ten thousand bushels of wheat with Kempner, which stood at about 83¼ cents.

No doubt complainant intended to gamble in the price of wheat, and his agent, McLoraine, was aware of that intention; but no relief was sought against McLoraine, and there was no evidence that Kempner was aware of an intention to gamble or that he had such an intention. His evidence was that he had no such intention, but intended to receive and pay for the wheat for complainant at the maturity of the contract unless the contract should sooner be closed. An undisclosed intention of complainant to gamble in grain and settle in differences was not sufficient to prove a violation of the law by Kempner. (*Scanlon* v. *Warren,*

169 Ill. 142.) It is quite clear that the chancellor was right in his conclusion that the transaction was not void as a gambling transaction. As to whether there was any misrepresentation by McLoraine concerning the price at which he held the wheat and the continuance of the previously existing general agency, the complainant and McLoraine contradicted each other. If there was any misrepresentation as to the price of the wheat Kempner knew nothing about it. It is undisputed that McLoraine was authorized to have the purchase transferred to complainant and to deposit the stock certificate as security, and Kempner's rights could not be affected in any manner by a misrepresentation of McLoraine to the complainant as to the contract price for the wheat. McLoraine was not the agent of Kempner and received no compensation from him, but he was the agent of complainant. The testimony, in its most favorable light to the complainant, showed that he was liable for the loss on the first purchase. As to whether there was any understanding between complainant and McLoraine for a continuance of the existing agency the evidence was conflicting. The chancellor heard the witnesses upon whose credibility the decision of that question depended, and his judgment is entitled to much weight. The receipt which was delivered to complainant acknowledged the receipt of the stock certificate, not as security for the first purchase but "as margins on trades," and there was evidence tending to show that complainant was informed of the trades as they were made. There was a charge of $40 as "Milwaukee trans." of which we find no explanation or support in the evidence. Leaving that out, there was nearly $1000 due Kempner for which he held the stock certificate as security, and it follows that the court was right in dissolving the injunction and dismissing the bill.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*